PAINE vs. WILCOX, and others.

A verbal agreement for the sale of lands will be enforced in equity where there has been such a part performance that it would operate as a fraud upon either party to allow the other to repudiate it.

W. had obtained a judgment of foreclosure and sale against A., who was the owner of the equity of redemption and was about to appeal from the judgment, and stay the sale, which he was induced not to do by reason and upon the faith of a verbal agreement made with the attorney of the owner of the judgment, that the sale should take place and the property be bid off by the owner of the judgment, and that he would convey the same to B. upon certain conditions including the payment of the amount of the judgment with interests and costs, which agreement was to be reduced to writing after the sale ; W. acquired the property at such sale, but refused to sign such agreement or perform the same, and denied the authority of his attorney to make it. *Held*, 1. That the relinquishment of further litigation and omitting to stay the sale, were such acts of part performance, as would take the agreement out of the statute of frauds, and that under such circumstances it was no obstacle to the enforcement of the agreement.

2 W. could not adopt the act of his attorney so far as to hold the title acquired at such sale, and repudiate as unauthorized the agreement by which the sale was allowed to take place.

APPEAL from the Circuit Court for *Fond du Lac* County.

The plaintiff, *Nathan Paine*, in his complaint brought against *Calvin Wilcox*, *Edwin Wheeler* and *Cornelius Coolbaugh*, alleged in substance that one *Geo. M. Paine* was on the 13th day of August, 1857, the owner in fee of certain lots in the city of Oshkosh, in the county of Winnebago, and that on that day he

mortgaged the same to the defendant *Wilcox*, to secure the payment of certain promissory notes, amounting to $3,400, with interest at twelve per cent.; and that on the 8th day of October, 1858, said *Wilcox*, commenced an action against said *Geo M. Paine* and *C. N. Paine*, and others in the circuit court for Winnebago county, for the foreclosure of this mortgage, and that the said *Geo. M. Paine* put in a defense to such action, but that such proceedings were had that on the 19th day of April, 1860, judgment of foreclosure and sale was rendered therein in favor of said *Wilcox* and against the defendants therein, in and by which it was adjudged that said property should be sold to pay the amount due on said notes and mortgage and costs, by and under the direction of the sheriff of Winnebago county, &c. That said premises were advertised for sale under such judgment, and came to be sold and were sold on the 1st day of November, 1860, to the said *Wilcox*, pursuant to said judgment, and a sheriff's deed thereof was duly executed and delivered to him, and a report of said sale made to the court. The complaint further alleged that said *Geo. M. Paine*, one of the defendants in said foreclosure, had drawn up and procured to be settled and signed, a bill of exceptions therein, and caused the bail to be fixed, to be given on an appeal from said judgment of foreclosure to the supreme court, and had fully perfected the necessary papers for taking such appeal, and that before said sale, and on or about the 15th day of October, 1860, an agreement was entered into by and between the said *Wilcox* and the said *George M. Paine*, and this plaintiff, whereby the said *Wilcox* agreed to and with the said *George M. Paine*, in consideration that the said *George M. Paine* would not take an appeal in said cause to the supreme court, but would waive and forego the same, and would surrender up the possession of the said mortgaged premises mentioned and described in the complaint and judgment in said action, to the said *Wilcox*, and make no further objection to the sale of said premises upon said judgment in said action; that then and in that case the

said *Wilcox* would bid off the said premises at said sale for the full amount of the judgment and costs in said action, and would fully cancel, satisfy and discharge the said judgment in said action, and wholly discharge the said *George M. Paine* and the other defendants in said action therefrom, and would sell and convey said mortgaged premises to this plaintiff, for the amount due upon said judgment for principal, costs and interest, up to the first day of November, 1860, the day when said premises were to be sold as aforesaid, amounting in the whole to the sum of five thousand two hundred and eighty-four dollars and sixty-two cents, and give the plaintiff four years time to pay for the same, except the sum of five hundred dollars and the costs, &c., of said suit, which was to be paid on the day of said sale, being said first day of November, A. D. 1860 ; the balance to be paid by this plaintiff to the said *Wilcox* in four equal annual payments of eleven hundred and sixty-two dollars and five cents each, with interest at the rate of ten per cent. per annum, payable annually ; and that he would let the plaintiff into the possession of the said premises on the first day of November, 1860 ; and upon the full and complete payment of the said sum of five thousand two hundred and eighty-four dollars and sixty-two cents with the interest thereon, then and in that case he, the said *Wilcox*, would execute and deliver to this plaintiff, a good and sufficient deed of said premises free and clear from all incumbrances by, through or under him. That the said *George M. Paine* then accepted the proposition of the said *Wilcox*, and agreed to take no appeal from the judgment rendered in said cause, and to waive and forego the same, and to surrender and yield up posssesion of the said premises to said *Wilcox*, and make no further objection to the sale of said premises upon said judgment in said action; that the said *George M. Paine* did not take an appeal in said cause, but did waive and forego the same, and did make no further objections to the sale of said premises, and did surrender up and deliver

the possession thereof to the said *Wilcox*, and in all things fully complied with said agreement upon his part.

That at the request of the plaintiff the defendants *Wheeler & Coolbaugh* who acted as the agents and attorneys of the defendant *Wilcox* reduced the agreement for the sale and conveyance of said property to the plaintiff to writing, and delivered a copy of the same to him, and forwarded the agreement to said *Wilcox* to be executed by him and returned to said *Wheeler & Coolbaugh* to be by them delivered to the plaintiff. (Said agreement was made an exhibit to the complaint, and appeared to be an agreement for the sale and conveyance of the premises in question to the plaintiff, upon the terms as to payment and possession of said premises and the execution of a conveyance thereof, as the agreement above set forth, and was fully and particularly drawn up to be executed.) That on the 1st day of November, 1860, *Wilcox* delivered possession of said premises to this plaintiff, and that he has ever since then been in possession thereof under such agreement, and that on the same day he by his agent tendered to the defendant *Coolbaugh* the sum of $636.45, for the payment of $500, and costs of suit, &c., but *Coolbaugh* requested him to keep the same for a few days, when the written agreement would be returned, and that as the plaintiff was then in possession, it would be all right; that afterward, on the 18th of November, 1860, the said *Coolbaugh* offered to deliver a contract for the sale and conveyance of said premises executed by said *Wilcox*, which the plaintiff refused to accept for the reason that it was not the agreement made as aforesaid, and under which he was in possession, and that he then made a tender of said sum of $636.45 on the contract as above set forth, but the said *Wilcox* would not receive the same; and that since then the plaintiff has expended the sum of $1,000, in repairing the premises, and has in all respects kept and performed his agreement with the defendant *Wilcox*. The complaint further alleges that the said sheriff's sale was confirmed, and that afterwards *Wheeler & Cool-*

*baugh* combined and confederated with the defendant *Wilcox* to deprive him of his rights in the premises, and delivered the sheriff's deed and a copy of said order to the sheriff to demand possession of the said premises, and that they caused such demand to be made, and procured a writ of assistance to be issued and delivered to the sheriff to eject and turn the plaintiff out of possession and threatened to have the same executed; it prayed for an injunction and general relief. The complaint was verified.

The defendant *Coolbaugh*, in his answer denied the making of the agreement set out in the complaint, and alleged that on or about the 15th day of October, 1860, he had a conversation with *E. L. Paine*, plaintiff's father, in which he stated in substance that one Denninnery a resident of the state of New York, had submitted to him a proposition to sell the interest of said *Wilcox* in the premises in question, and also at other times stated to him the terms on which he, *Wilcox*, would sell to said *Paine* his interest in said premises, and that he distinctly stated and submitted the terms and conditions which had been submitted to the defendant *Coolbaugh* by said Denninnery on behalf of the said *Wilcox*, and that said *E. L. Paine* afterward stated to this defendant he would accept the same if he could raise the money to make the part payment, and that to enable him to raise the money for that purpose, the sale of said premises was postponed at his, *Paine's*, request until Nov. 1st, 1860. He further alleged that the proposition submitted by the said Denninnery to this defendant, and by this defendant to the said *E. L. Paine*, and which was accepted by the said *E. L. Paine*, was not such as that stated in the plaintiff's complaint in this action, but was as follows: The said *Wilcox* proposed to sell his interest in the mortgaged premises to the said *E. L. Paine* or to any person he should name, in case he, *Wilcox*, should buy them at sheriff's sale, and the said *E. L. Paine*, or the person he should name, was to pay to the said *Wilcox* the sum which was actually due to him on the notes and mortgage

from *George M. Paine*, according to the terms and conditions thereof, the interest to be computed annually at the rate of twelve per cent. per annum, with the further sum of two hundred and twenty dollars paid by the said *Wilcox* for *George M. Paine*, for insurance on the mill, together with interest on that sum, at the rate of twelve per cent. per annum annually from the time of the payment of said sum ; and he was further to pay all the costs of the foreclosure suit and of the sale of the said *Wilcox* against the said *George M. Paine*, which said costs and disbursements were estimated and determined to amount to about the sum of one hundred and thirty-six dollars and forty-five cents; and the said *E. L. Paine* was to pay down the sum of five hundred dollars and the costs of said foreclosure suit, and was to pay the balance in four equal annual installments with interest, payable annually at the rate of ten per cent. per annum ; and the said *E. L. Paine* was to give, as security for the payment of the balance of the purchase money, a mortgage on the lots and house occupied by the *Paines* in Algoma for the sum of one thousand dollars, to secure so much of the payment of the first installment, which said lots and house were to be free and clear from all incumbrances whatever ; and as further security the said *Paine* was to procure an insurance on the saw mill, which was a part of the mortgaged premises, for the sum of three thousand dollars, in some good and responsible company. The defendant further alleged that the said plaintiff had not then nor never had any legal possession of said premises, that he never had or entered into any agreement with the said *Wilcox* for the purchase of said premises at all, that was valid or binding upon either of the parties, that said transaction related to the sale and purchase of real estate within this state, and that the agreement as set forth by the plaintiff was not reduced to writing and signed by the said *Wilcox* or by any one for him who was authorized in writing to sign the same, and that the whole transaction and agreement as claimed by the plaintiff

was and is, within the statute of frauds, and entirely null and void for that reason, and he insisted upon the statute as a bar to said action, and alleged that the defendant *Wilcox* was amply responsible and able to respond to the plaintiff in any sum for damages which he might recover against him. The defendant *Coolbaugh* also denied all fraud and confederacy charged against him and the defendant *Wheeler* in the plaintiff's complaint. The answer of the defendant *Wheeler* alleges that he had no knowledge or information sufficient to form a belief in regard to the contract set out in the plaintiff's complaint, except that a copy of an agreement or purporting to be such was received by him but which he refused to sign or recognize, for the reason that he had never authorized any one to make such an agreement for him, and set out the proposition mentioned in the answer of the defendant *Coolbaugh*, and alleged on information and belief that it was accepted by the plaintiff, but that he had never complied with it or any part of it. The answer further denied on information and belief the greater portion of the complaint, and is in effect not materially different from that of the defendant *Coolbaugh*. These answers were duly verified. At the trial, the plaintiff offered in evidence the contract drawn up, but not signed, mentioned in the complaint, which was objected to by the defendants as incompetent and immaterial.

The evidence given on the trial in regard to the claims of the respective parties as to the contract or negotiations made before the sheriff's sale, and what took place at the sale in regard to the property in question, was conflicting. The evidence on the part of the plaintiff tended very strongly to show that a contract was made between the parties as set out in the complaint in this action, and that the plaintiff, after the time of the sheriff's sale, had possession of the premises in question under such contract. The allegations of the complaint in regard to the proceedings that had been taken to appeal from the judgment in the foreclosure, and that such intended appeal

was abandoned as therein stated, were fully proved. The plaintiff also gave evidence in support of the tender alleged in the complaint.

On the part of the defendants, considerable evidence was given, tending to prove that their version of the transaction was correct, and that no such contract as was set up by the plaintiff had been made. They also proved that the defendant *Wilcox* never authorized the making of any such contract. The evidence on these points, the principal ones in contest, was quite voluminous, and cannot be well condensed so as to give a full and fair statement of the facts proved.

Evidence was also given by the defendants, tending to show that they had obtained possession of the property in question by virtue of a writ of assistance issued after the confirmation of the sheriff's sale, but had been obliged to abandon it on account of hostile demonstrations on the part of the plaintiff and his agents.

The circuit court, among other things, found that the " plaintiff had failed to show that he ever entered into any agreement with the said defendant *Wilcox*, to purchase of him the said mortgaged premises in the manner and form alleged in his complaint, or that he entered into and upon said premises with the consent of the said *Wilcox*, or with his knowledge, but that the said plaintiff, if in the possession of said premises at all, was there by virtue of a former possession, which was in no way or manner connected with the said *Wilcox*, or derived from him, but was through and by the said *George M. Paine*, or else without any authority in law, so to enter upon said premises.

The court found as a conclusion of law, that the plaintiff was not entitled to the relief demanded in the complaint in this action, nor to any relief; and that the defendant *Wilcox* was entitled to the possession of said premises, and that he acquired possession thereto on the sixth day of May, 1861, and that any interference with said possession without his consent,

was in violation of law, and judgment was entered accordingly, and directing the plaintiff and his agents, &c., to surrender and deliver possession of the premises to the plaintiff. The plaintiff took exceptions to the decision of the court, and appealed.

*Freeman & Jackson, and Finches, Lynde & Miller,* for appellant. 1. The writ of assistance could not go or be executed against the plaintiff, who was not a party to the foreclosure suit, but came in under the mortgagee *Wilcox.* It extends only to persons who are parties to the foreclosure suit, or who have come into possession subsequent to its commencement, under the mortgagor or with his consent. *Boynton vs. Jackaway,* 10 Paige, 307; Hopkins' Ch. Rep., 422; *N. Y. Gas Co. vs. Cutler,* 9 How. Pr., 412; *Van Cook vs. Throckmorton,* 8 Paige, 34; *Gelpecke vs. M. & H. R. R.,* 11 Wis., 461; *Tell vs. Hiller,* 11 Paige, 228. 2. The agreement set out in the complaint and the possession of the plaintiff under it were fully proved, and the plaintiff was entitled to have it specifically performed. *Smith vs. Finch,* 8 Wis., 251. 3. The claim of *Wilcox* to the property cannot be upheld against this agreement, and *Wilcox* must either be held to the agreement, or it be vacated. He cannot affirm the transaction as to that part which is beneficial to him, and repudiate it as to the residue, and his obtaining a writ of assistance is an affirmance of the sale. *Farmers' Loan and Trust Co. vs. Walworth,* 1 Comst., 447; *Newell vs. Hurlburt,* 2 Vt., 352. Having adopted the sale, he must adopt the agreement by and under which the sale was made and the title given to him. *Moss. vs. The Rossie Lead Mining Co.,* 5 Hill, 139; *Hovil vs. Polk,* 7 East., 164; *Burrill vs. The Nahant Bank,* 2 Met., 163; Story on Agency, § 244; *McLean vs. Dunn,* 4 Bing., 722; *Lawrence vs. Taylor,* 5 Hill, 107; *Daggett vs. Emerson,* 3 Story, 700.

*C. Coolbaugh,* for respondents.

1. There was no authority on the part of *Wheeler* and *Coolbaugh* to make any contract for the sale of the premises. No such contract was made, and there was no surrender in writ-

ing of the interest of *Geo. M. Paine* therein. *Howard vs. Foster*, 7 Johns., 206; Brown on Stat. of Frauds, 231, and note; R. S., chapt. 86, sec. 7. 2. There was no definite, certain or completed agreement proved. *Blanchard vs. McDougall*, 6 Wis., 167; 1 Lead Cases in Eq., 731; 2 Story Eq., § 761; Brown Stat. of Frauds, 454, 460, 473. 482; *Harris vs. Knickerbocker*, 5 Wend., 638, and cases cited at 650. 3. The possession of the plaintiff was referable to a former state of things, and not to any contract. 1 Lead Cases in Eq., 735, 739; 6 Wis., 170; 8 Cush., 224; 2 Story Eq., § 762. 4. It is alleged and not denied that *Wilcox* is a man of means and able to respond in damages to the plaintiff, and the universal doctrine is that a court of equity will not interfere by injunction or otherwise, where the party has a full and adequate remedy at law. Brown on Stat. of Frauds, 452; *Smith vs. Finch*, 8 Wis., 250; 2 Eden on Injunctions, 365; 9 Wend., 570; 19 Barb., 371; 2 How. Pr., 349. 5. The court below has found in favor of the defendants upon all the facts of the case, and this court will not review or interfere with such finding, especially where there is a conflict of testimony. *Evans vs. Bennett*, 7 Wis., 404; *Perkins vs. Murphy*, 9 Wis., 100; *Hutchinson vs. Eaton*, 9 Wis., 226; *Davis vs. Judd*, 11 Wis., 12; *Hawkes vs. Dodge Co. M. I. Co.*, 11 Wis., 188; *Hunt vs. Bloomer*, 3 Kernan, 341.

*By the Court*, PAINE, J. We differ from the conclusion of fact arrived at by the court below "that the plaintiff had failed to show that he had entered into an agreement with the defendant *Wilcox* to purchase the mortgaged premises as alleged in the complaint." And by this we do not mean to say that the proof shows that a written agreement of that kind was completed, so as to make it sufficient under the statute of frauds. Nor does the complaint so allege. But we mean that such an agreement was verbally entered into; that it was a part of that agreement, that the appeal proceedings should be discontinued and the premises allowed to be sold to *Wilcox* on the foreclos-

ure judgment; and that the plaintiff acting through his agent and those interested in the equity of redemption, discontinued the appeal, and allowed the sale thus to take place on the faith of the agreement made by *Wilcox* through his agent *Coolbaugh* to convey the property to the plaintiff, as alleged in the complaint, and also that it was agreed that *Wilcox* should sign the agreement, as it was prepared by *Coolbaugh* and forwarded to him for that purpose.

This state of facts is plainly testified to by *E. L. Paine*, and his statements are so strongly corroborated by other testimony, and by the admissions and evidence on the part of the defense, as to leave no doubt as to their truth.

There are certain leading facts about which there can be no dispute, a clear understanding of which will throw light on the whole transaction, and lead almost inevitably to a correct conclusion upon these points about which there is dispute. *Wilcox* had a foreclosure judgment, upon which the property was advertised for sale. The case was still in a condition to appeal, and the parties were about to take an appeal to the supreme court. While in this position, a proposition was made by the plaintiff, through his agent, that the property should be allowed to be sold by the sheriff, and bid off by him, and that he would re-convey to one of the *Paines* upon certain terms to be agreed on. This proposition was entertained ; negotiations were had ; and an understanding of some kind was arrived at by the parties. All the evidence concurs in this.

The point of dispute is as to the terms of that agreement. And upon this it would require very strong proof to do away with the effect of the written contract, drawn up by *Coolbaugh*, and forwarded for execution by *Wilcox*. There can be no doubt, that that writing was intended to, and did contain the agreement as made between *Coolbaugh* and the *Paines*. There was some attempt on the part of *Coolbaugh*, both in his testimony and in the argument, to claim that it was designed only as a memorandum to serve as a guide to *Wilcox*. But this

suggestion seems utterly unfounded. In the first place it is wholly improbable that the *Paines*, negotiating in regard to interests which they deemed valuable, would have allowed the sale to proceed and the land to be bid off by *Wilcox*, except upon the supposition that some definite agreement had been concluded, by which their rights were to be secured. The paper itself is inconsistent with such an idea, for it is a complete, formal land contract, filled up from a printed blank, and containing the entire agreement with precision and particularity. And why should *Wilcox* need a " memorandum " from *Coolbaugh* to " serve as a guide ?" If no agreement had been concluded between *Coolbaugh* and the *Paines*, and *Wilcox* was himself to declare the terms of sale, then, for the first time, why should he need any instructions from his agent? It is very difficult to perceive. But if such an agreement had been concluded, then there would be nothing left for *Wilcox* to do, but to execute it. And it was entirely in accordance with this fact that his agent drew up a formal land contract, containing a complete and perfect agreement, and forwarded it for execution. That *Coolbaugh* himself so regarded the paper, is apparent from the evidence. He told Woodworth, the sheriff, that "; an arrangement had been or would be made, whereby the premises would be sold on the adjourned day whether or no." He said, on the day of the sale, that an arrangement had been made and would be consummated, " as soon as the papers could be sent and returned," evidently referring to the paper he sent for execution. The witness Gary heard him say that " there was a *contract* which would come in a few days from *Wilcox*, at which time the fees would all be paid," showing that he expected the contract he had forwarded to be returned. It is also obvious from the answer of *Wilcox*, that he understood the paper was forwarded to him, as the contract which *Coolbaugh* had made with the *Paines* for him to execute. For he says that he did receive a copy of an agreement, " which he refused to sign or recognize, for the reason that he had

never authorized any one to make such an agreement for him." This language would not have been used with reference to a paper sent to him " as a mere memorandum." He repudiated it for the reason that *Coolbaugh* had, as he claimed, no authority to make it; not on the ground that it was not intended as the agreement he was to execute. These circumstances, and others that might be pointed out if necessary, lead unmistakably to the conclusion, that that contract contained the terms actually agreed on between *Coolbaugh* and the *Paines*, upon which *Wilcox* was to convey the property to the plaintiff.

*Wilcox*, however, refused to execute it, but returned another contract, imposing new and additional obligations on the plaintiff, which the plaintiff refused to accept, and insisted on his right to a specific performance of the agreement made between him and *Coolbaugh*.

The question of law presented is, whether he has a right to have it specifically enforced. It is said not, because the agreement was not signed by *Wilcox*, and so is within the statute of frauds. But verbal agreements for the sale of lands are enforced in equity, where there has been such a part performance that it would operate as a fraud upon either party to allow the other to repudiate. The case of a verbal agreement to sell, and the delivery of possession under it, is a common one for the application of this rule. And it is claimed that such was the case here. And there is little doubt from the evidence, that it was understood that the *Paines* were to remain in possession after the foreclosure sale, in pursuance of this agreement, and not by their former right, until the matter could be consummated by the delivery of the papers. The evidence upon this point is not very conclusive, but such as there is, leads to this conclusion. The witness Gary says that *Paine* offered *Coolbaugh* some money, which *Coolbaugh* refused until the contract should come, *but told Paine " to go on with the mill."* Now it cannot be assumed that this was a direction to the *Paines* "to go on with the mill" under their rights as they

stood before the foreclosure sale, for that sale had divested those rights. The language used, assumed that the right to control possession had passed to *Wilcox* by the sale, and therefore *Coolbaugh*, as his agent, in pursuance of the verbal agreement that *Wilcox* should re-convey to the plaintiff, and expecting soon to deliver the contract which he had forwarded to be executed, disposed of the possession in the meantime, as he did, which was entirely natural under the circumstances. *Mr. Coolbaugh*, who cross-examined this witness seemed to feel the force of this evidence, and attempted to obviate it, by asking if the statement to *Paines*, to go on with the mill, was not made in an indignant manner ; implying, as he urged here on the argument, that it was designed and understood only as an angry protest against their having so long " contested the possession." But this explanation seems entirely improbable. For leaving out of view the fact that there could have been no " long contest " about the possession before the sale, still if there had been, after the matter was all harmoniously adjusted and the sale allowed to proceed by mutual consent, and *Coolbaugh* expected in a very few days to deliver the contract entitling the *Paines* to remain in possession, it was rather too late for any sudden manifestation of anger on the previous " contest." We think, therefore, it might well be found from the evidence, that although the same parties remained in the actual occupancy of the mill who had previously occupied it, still that they held it, after the sale, under this direction of *Coolbaugh* even as agent of the plaintiff.

But whether that were so or not, there is another sufficient ground for taking the agreement out of the statute of frauds. The party owning the equity of redemption was about to appeal from the judgment and prevent the sale. This he was induced not to do, by a proposition coming from the owner of the judgment, that the sale should take place, and the property be bid off by him, and that he would re-convey upon certain conditions, including the payment of the amount due

on the judgment, with costs and interest. This proposition was accepted by him, and he neglected to take his appeal, and allowed the sale to take place on the faith of it. It is true that *Coolbaugh* testified that he never made any proposition to induce the plaintiff not to appeal or stay proceedings. But he says, that he did submit a proposition, and that a part of it was that "the property must be sold by the sheriff." This of course implied that the sale was not to be stayed, and the whole arrangement between *Coolbaugh* and *Paines* was obviously based upon this assumption. I can, therefore, only explain the statement that he never made any proposition to induce the plaintiff or his agent not to stay proceedings, by supposing him to mean, that he never made a proposition containing that in express words. For it was plainly implied as a necessary condition to the acceptance of the proposition which he did make. It is evident, also, that *Coolbaugh* so understood it, from his statement to Woodworth that "an arrangement had been made by which the sale would take place on the adjourned day, whether or no." There can be no doubt that the *Paines* relinquished the appeal and allowed the sale to take place upon the faith of this verbal agreement, that *Wilcox* should execute a contract to convey on the terms specified. Those were such acts of part performance on their part as to entitle them to have the agreement enforced, on the ground that it would operate as a fraud on them to allow it afterwards to be repudiated. It is often true, as was stated in the case of *Sweet vs. Mitchell,* decided at this term, that parties whose lands are liable to be sold on legal process make some arrangement, for the purpose of saving their interests, which involves the giving of security upon the very lands already threatened with sale; and to accomplish this, they often allow such sale to take place for the mere purpose of passing the title, where it is necessary for it to go, to become such security. And whenever parties so situated, and being also in a condition to prevent a sale by further litigation, make an agreement with

the adverse party by which the sale is allowed to take place for the purpose of passing the title to a particular person, who is to hold it as security, or to re-convey upon certain terms, it might operate as the grossest fraud upon them, if the one who had thus obtained the title, might then repudiate the agreement and assume the character only, of a general purchase at a judicial sale. Where a judicial sale proceeds altogether *in invitum*, each party stands upon his own rights, and neither is thrown off his guard or induced to neglect any steps necessary to protect himself. But where such sale is allowed to take place for the purpose of executing an amicable arrangement, like the one before mentioned, the most valuable interests might be sacrificed, if the party thus getting the title could ignore the agreement and insist on being regarded only as a hostile purchaser. To get a title by means of such an agreement, used to throw the owner off his guard and induce him to abandon his litigation and deliver himself defenceless in the hands of his enemy, and then claim to hold as though the sale had been entirely adverse without any such agreement, is an obvious fraud. The relinquishment of further litigation, and the neglect to stay further proceedings, constitute very important features of such contracts. It is impossible to restore the party who has so far performed his part of such an agreement, to his former position. And his rights can only be preserved by enforcing the agreement on the faith of which he acted. *Daniels vs. Lewis, ante* p 140. And what makes this case still the stronger, is the fact, that it was here agreed that the contract should be in writing and signed, and *Wilcox*, after getting the title by virtue of the arrangement, then refused to execute the contract. Upon these facts the statute of frauds forms no obstacle to the enforcement of the agreement.

It was also claimed in the argument, that the agreement should not be enforced for the reason that *Coolbaugh* had no authority to make it. But whether he had or not, *Wilcox* cannot adopt it so far as to hold the title obtained under it, and

repudiate the conditions upon which the sale was allowed to take place. The remarks already made, as to the distinction between a judicial sale thus obtained, and one proceeding *in invitum* only, are applicable here. The judicial proceeding in such a case should be regarded only as a means of passing the title under the agreement of the parties, and a principal should not be allowed to adopt the act of his agent so far as to hold the title thus obtained, and repudiate the conditions. If he repudiates at all, he should repudiate the whole, and set aside the sale, so as to restore the other party to his former position.

The judgment must be reversed, with costs, and the cause remanded with directions to enter a judgment in the plaintiff's favor, for a specific performance of the agreement alleged in the complaint.