## Case No. 6,792.

### HOWLAND v. BLAKE et al.

#### [7 Biss. 40.] [1]

Circuit Court, E. D. Wisconsin. Oct., 1874. [2]

EFFECT OF PAROL AGREEMENT UPON ABSOLUTE DEED—PAROL EVIDENCE TO CHANGE TERMS OF WRITTEN INSTRUMENT.

1. A parol statement of a mortgagee when foreclosing that he "only commenced the suit for the purpose of perfecting the title; that the plaintiff's interests should not be affected by it; and that he would carry out a previous arrangement made that he would pay the debt out of the rents and profits," is not of such a nature as would make an absolute deed obtained by the mortgagee on foreclosure a conditional one, and would not render such a deed a continuation of the mortgage.

[See Amory v. Lawrence, Case No. 336; Andrews v. Hyde, Id. 377.]

2. The rule which allows parol evidence to be introduced to show that a deed absolute on its face is a mortgage, should not be enlarged, but should be strictly construed, and the evidence should be very strong.

[See note at end of case.]

[This was a bill in equity by Eugene Howland against Lucius Blake and others, involving the title of plaintiff to certain mortgaged real estate.]

Dixon, Hooker & Palmer, for complainant. Fish & Lee and Fuller & Dyer, for defendants.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed in 97 U. S. 624.]

DRUMMOND, Circuit Judge. The facts of this case may be briefly stated: Eugene Howland was the owner of a block in the city of Racine, which he mortgaged to Isaac Taylor to secure a loan made to him by Taylor.

The mortgagor, or rather his agent and brother, Richmond W. Howland, who seems to have acted for the plaintiff not only in the purchase of the property, but in the construction of the building which was put upon it and also in connection with the loan, came to the conclusion that the loan could not be paid except by the rents of the property, and Mr. Taylor was put in possession with a view of receiving the rents and profits, and so paying for the loan. This was done under a written contract or minute of possession.

Mr. Taylor accordingly took possession, leased the property, received the rents, paid the taxes and insurance, and took general charge of it. The loan matured, and was not paid. The arrangement when Taylor took possession was, that when the money was paid, the property should be re-conveyed to the plaintiff. It not being paid at maturity, Taylor instituted proceedings to foreclose the mortgage. While they were pending in the state court, it is alleged that an arrangement was made between the brother of the plaintiff and Mr. Taylor, by which after the foreclosure Taylor was to hold the property as before and collect the rents, and when an amount was received sufficient to pay the debt, the property was to be re-conveyed to the plaintiff. The whole of that arrangement is stated by Richmond W. Howland, and it may be proper to refer to his testimony.

He states it as follows: "Shortly after the suit was commenced—that is the suit to foreclose—I called on him—(Taylor)—with reference to the foreclosure, at which time he assured me that the plaintiff's interest should not be affected by it; that he only commenced the suit for the purpose of perfecting the title. He also stated he would carry out in good faith all arrangements he had made previous to that. He agreed to bid in the property, pay the amount due on the judgment, and I was not to make any delay in the suit. He was to continue in possession, and apply the rents or earnings as he had done previously. After the debt was paid, the property was to revert back to the plaintiff. There was to be a conveyance made to him."

That seems to be the substance of the arrangement made, according to Richmond W. Howland. I do not know that there is anything in the evidence to change the account which is thus given by him.

Now, the question is whether, under the circumstances of the case, it is competent for the plaintiff thus to establish that the title which Taylor took under this sale was a mortgage, and that he held it subject to the

same equities on the part of the plaintiff, as he did prior to the commencement of any proceedings to foreclose the mortgage.

I think the weight of the evidence may be —although it is subject to a good deal of criticism inasmuch as a large part of it consists of admissions or statements made by Taylor, who is now dead—that perhaps some arrangement was made. But I am of opinion that it is not competent for the plaintiff to make out, under the circumstances in this case, that this second title was a mortgage precisely as it existed before the commencement of the foreclosure suit, and therefore I hold that all this testimony is incompetent. And it seems to me that this is a case where the court ought to be somewhat stringent in relation to parol testimony.

The mortgagee, the purchaser under the proceedings in the foreclosure suit, is dead. He cannot speak for himself. Parties come forward who state what he agreed to do and what he said, and in that way it is sought to make out something different from what appears upon the face of the papers.

It is of course well settled that a deed absolute upon its face may be shown by parol to be simply a mortgage, a security for a debt. There may be some question as to the propriety of the adoption of that rule, but I suppose it may now be considered as settled that is the rule of equity upon the subject.

But where a mortgage is given and that mortgage is foreclosed, and the mortgagee is the purchaser and an absolute deed is made to him, the equity of redemption being foreclosed by judicial proceedings, I hold that the proof ought to be just as strong to make the second deed a mortgage as it would have been in the first instance, and perhaps even stronger.

Now, what are the facts under which it is sought to make out a new and independent contract by which this second title was to be held as a mortgage and not an absolute deed? What did Taylor do? What new fact occurred? Who was in possession of the property? Who remained in possession? As to that, there was no change. The only thing that could be said to operate upon the parties in order to create a new arrangement, was that Richmond W. Howland was to do nothing to delay the proceedings. "I was to make no delay in the suit," he says. That is all there was. Now the question is whether that of itself constitutes such a new contract, or modifies or changes the old in such a way as to destroy the effect of the proceedings which actually took place.

It may well be asked, What was the object of Mr. Taylor in foreclosing this mortgage if things were to remain precisely in statu quo? He certainly had some motive in putting an end to the equity of redemption. And yet it is claimed that the equity of redemption still existed after the foreclosure, decree, sale and deed.

I have been referred to the case of Paine v. Wilcox, 16 Wis. 202, which was not cited at the argument. That case was something like this. There was a mortgage of some land. The mortgage was foreclosed, a decree was entered, and the mortgagor made an arrangement with the mortgagee by which he agreed not to take an appeal from the decree of foreclosure, and placed the mortgagee in possession, and the mortgagee agreed upon the payment of the amount of the debt to re-convey the property. But that case proceeds upon this ground:—without criticising the case itself, which perhaps might well be done—that there was a new contract made so as to entitle the party to a specific performance of the contract; that there were circumstances in the case which took it out of the statute of frauds, and enabled the mortgagor to come into a court of equity and ask for a specific performance of the contract.

The court held that the relinquishment of the further litigation, and omitting to stay the sale, were such acts of part performance as would take the agreement out of the statute of frauds, and that under such circumstances it was no obstacle to the enforcement of the agreement.

They also say that the party—the mortgagee—could not adopt the act of his attorney so far as to hold the title acquired at such sale, and repudiate as unauthorized the agreement by which the sale was allowed to take place, which seems rather a singular proposition; that a client is obliged to adopt an agreement made by an attorney simply because he is employed to foreclose a mortgage, and the force of which I do not very well understand.

Now, in this case, if the party is entitled to relief at all, it is because things were unchanged and the title was no more than it had been, that it was still a mortgage. I do not feel inclined to hold in a case such as this, where a mortgagee forecloses his mortgage, and the equity of redemption is ended by the decree of a competent court, and he has taken an absolute title to the property, that he still is a mere mortgagee.

And it seems to me that the case in itself constitutes a very strong illustration of the propriety of not enlarging the rule which already exists, and which enables a party to show that a deed absolute upon its face is nothing but a mortgage.

The result would be that parties could go on without limit, and it might in effect be said that there never could be a foreclosure of the mortgage. Deeds might be made, foreclosures take place, and still it would be a mortgage. I am entirely willing to place the decision upon what is alleged to be the arrangement made between Mr. Taylor and Mr. Richmond W. Howland, and to say that it is not of such a character as to enable a party by parol to show that it was simply a mortgage or simply a security for a debt.

Now, I leave out of view the conduct of

Mr. Taylor, which, of course, is entirely inconsistent with the theory claimed by the plaintiff, his treating the property as his own, making repairs upon it, paying the taxes and insurance, and selling it to these defendants, declaring that his title was a good title, making covenants of warranty, &c. I think it is quite possible that this may be the explanation of a good deal that was said by Mr. Taylor, and so may be consistent with the truth of a portion of the testimony, namely, that he did not want this property himself, but the payment of his debt, and that he may have said in some loose way, from time to time, that was all he cared about. But, it is unlikely under the circumstances that a man should make an absolute contract, binding upon him for an indefinite time, to treat that which was a perfect title simply as a defeasible title. The bill will therefore be dismissed.

[NOTE. An appeal was then taken by the plaintiff to the supreme court, where the decree was affirmed in an opinion by Mr. Justice Hunt, who said that the burden was on the plaintiff to show by testimony entirely plain and convincing, beyond reasonable controversy, that the writing does not express the will of the parties, and should be reformed by the court; that such evidence not having been produced to show the alleged promise, and the plaintiff's continuing interest in the land, the parol agreement was void, under the statute of frauds. 97 U. S. 624.]